UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL SANCHEZ, | ) | 1:04cv6148 DLB |
| | ) | |
| | ) | |
| | ) | ORDER GRANTING DEFENDANT'S |
| Plaintiff, | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| v. | ) | (Document 11) |
| | ) | |
| PARAMOUNT FARMING CO., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On September 15, 2005, Paramount Farming Co. ("Defendant") filed the instant motion for summary judgment. The matter was heard on October 21, 2005, before the Honorable Dennis L. Beck, United States Magistrate Judge.[1] Alfred Buzo appeared on behalf of Daniel Sanchez ("Plaintiff"). There was no appearance on behalf of Defendant.

**BACKGROUND**

Plaintiff filed this action in August 2004, alleging employment discrimination based on age and disability. Pursuant to the parties' stipulation, the following claims remain: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) disability discrimination under the California Fair Employment and Housing Act, Government Code § 12940, et seq., ("FEHA"); and (3) age discrimination under FEHA.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 8, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

Defendant filed the instant motion for summary judgment/partial summary judgment on September 15, 2005.[2] Plaintiff filed his opposition on October 4, 2005, and Defendant filed its reply on October 14, 2005.

## UNDISPUTED MATERIAL FACTS

Prior to Plaintiff's termination, Scott Guseman was the Personnel Coordinator, Maria Chavira was the Human Resources Specialist and Jose Isaiz was Plaintiff's Supervisor. Declaration of Scott Guseman ("Guseman Dec."), ¶ 5, Declaration of Maria Chavira ("Chavira Dec."), ¶ 4, Declaration of Jose Isaiz ("Isaiz Dec."), ¶ 3. Defendant provides an employee handbook, available in both English and Spanish, to all employees. Guseman Dec., ¶ 7; Chavira Dec., ¶ 5. Plaintiff received a copy of the handbook and understood that the handbook applied to all of Defendant's employees. Deposition of Plaintiff, attached as Exhibit A to Declaration of David Dixon ("Plaintiff's Dep."), 13:1-3, 18-25; Guseman Dec., ¶ 8. Under Defendant's personnel policies, all employees are at-will. Guseman Dec., ¶ 9.

Under Defendant's Call-in Procedure policy, employees who are absent for three days without reporting their absence will be considered to have voluntarily resigned from employment. Guseman Dec., ¶ 10 and Ex. C, Chavira Dec., ¶ 7. The Call-in Procedure specifically provides as follows:

> If an employee is sick or unable to work, he/she must call the first day of the absence. Absences in excess of three (3) days require a doctor's release. All calls must be placed by you.
>
> Employees who are absent three (3) days without reporting their absence will be considered to have voluntarily resigned from employment.

Exhibit C, attached to Guseman Dec.

Defendant's General Rules and Regulations also provide that excessive absences or tardiness will not be tolerated. Specifically, the rule states, "Any employee who is absent for three (3) consecutive days without notifying PFC will be terminated." Guseman Dec., ¶ 12,

---

[2] Plaintiff contends that the motion is untimely because it was noticed on September 19, 2005, after the dispositive motion deadline of September 15, 2005. However, a review of the docket reveals that the motion was filed on September 15, 2005, and re-noticed on September 19, 2005. Defendant explains that the motion was re-noticed at the request of the clerk to correct an unavailable hearing date. Defendant re-noticed the motion for hearing from October 17, 2005, to October 21, 2005.

2

Exhibit C.[3]  Plaintiff knew that if an employee failed to call in to work for three days, the employee would be terminated.  Plaintiff's Dep., 14:6-21.

Defendant explains that the three day rule is a legitimate way in which Defendant conducts its business, given the hardships unexpected absences impose and the importance of timely notification to managers of any anticipated absence from work.  Guseman Dec., ¶ 13.  The three day rule applies to all employees and Defendant does not generally make individual exceptions.  Guseman Dec., ¶ 14.  Mr. Guseman and Ms. Chavira are not aware of any individuals who have remained employed after violation of the three day rule.  Guseman Dec., ¶ 15; Chavira Dec., ¶ 8.

On June 23, 2003, Plaintiff telephoned Mr. Isaiz and stated that he could not report to work that day due to gout.  Isaiz Dec., ¶ 4; Plaintiff's Dep., 60:12-61:10.  Plaintiff stated words to the effect that he expected, hoped or intended to return to work on June 25, 2003.  Isaiz Dec., ¶ 5; Plaintiff's Dep., 60:12-61:10, 72:5-15.  Mr. Isaiz understood these comments to mean that Plaintiff would report to work on June 25, 2003, or would call if he could not.  Isaiz Dec., ¶ 5.  Plaintiff was previously scheduled to work on June 25, 26 and 27, 2003.  Isaiz Dec., ¶ 6.  Plaintiff did not report to work or call in to report an absence on June 25, 26 or 27, 2003.  Isaiz Dec., ¶¶ 7-9; Plaintiff's Dep., 63:4-18.  On June 27, 2003, Mr. Isaiz reported Plaintiff's failure to his own supervisor, John Ogborne, and to Mr. Guseman and Ms. Chavira.  Isaiz Dec., ¶ 12; Guseman Dec., ¶ 16; Chavira Dec., ¶ 9. Mr. Isaiz, Mr. Guseman and Ms. Chavira communicated regarding the decision to terminate Plaintiff.  Isaiz Dec., ¶ 13; Guseman Dec., ¶ 17; Chavira Dec., ¶ 10.  The only reason expressed by any party to the communication was that he violated the three day policy.  Isaiz Dec., ¶ 14; Guseman Dec., ¶ 18; Chavira Dec., ¶ 11.

On June 27, 2003, Ms. Chavira wrote a termination letter to inform Plaintiff that his violation of the three day had resulted in the immediate termination of his employment,

---

[3] Plaintiff purports to dispute this and many other facts based on the distinction between the two policies.  Plaintiff argues that he complied with the Call-in Policy.  He also contends that it is not clear which rule was used to terminate Plaintiff.  As explained below, however, this is a distinction without a difference.

1 consistent with company policies.  Chavira Dec., ¶ 15, Exhibit A.  The letter was sent to Plaintiff
2 via certified mail on June 28, 2003.  Chavira Dec., ¶ 17, Exhibit A

3      Plaintiff attempted to return to work on June 30, 2003.  Isaiz Dec., ¶ 18; Guseman Dec., ¶
4 22; Chavira Dec., ¶ 18.  Ms. Chavira met with Plaintiff on June 30, 2003, and told him that the
5 only reason he was terminated was because consistent application of Defendant's policies
6 requires automatic termination of employment for any employee who fails to report to work or
7 call in for three consecutive days.  Chavira Dec., ¶ 19.  Mr. Isaiz was present during this meeting.
8 ¶ 19.  During this meeting, Plaintiff stated that he believed he did not have to call-in on the 25th,
9 26th or 27th, but admitted that he did not report to work on those days and that he would have
10 been able to make a phone call on these days.  Isaiz Dec., ¶¶ 19; Plaintiff's Dep., 68:21-69:22.

11      During the meeting, Plaintiff had a doctor's note dated July 27, 2003, that indicated that
12 he could return to work on June 30, 2003.  Chavira Dec., ¶ 22; Guseman Dec., ¶ 24; Isaiz Dec., ¶
13 20; Plaintiff's Dec., 64:1-65:10.  Neither Ms. Chavira, Mr. Guseman nor Mr. Isaiz was aware of
14 the doctor's note prior to June 30, 2003.  Chavira Dec., ¶ 23; Guseman Dec., ¶ 25; Isaiz Dec., ¶
15 20.  Plaintiff did not claim that he provided the doctor's note to anyone at the company prior to
16 June 30, 2003.  Chavira Dec., ¶ 23; Guseman Dec., ¶ 24; Isaiz Dec., ¶ 20; Plaintiff's Dec., 67:5-
17 12.  Plaintiff admitted that he did not provide the doctor's note to Defendant until June 30, 2003,
18 because he "wanted those two extra days to feel better."  Plaintiff's Dep., 67:5-12.  Plaintiff
19 admitted telling co-worker Leonel Gonzales on June 30, 2003, that "they said that I hadn't called
20 those three days and that I automatically had quit the job on my own," and that he was "actually
21 really embarrassed" during a brief conversation with a co-worker named Jorge that day because
22 "I had quit on my own."  Plaintiff's Dep., 37:3-39:19.  During his interactions with company
23 representatives on June 30, 2003, Plaintiff did not indicate any suspicion, etc. that indicated that
24 he was terminated for any reason other than his failure to report to work or call in for three
25 consecutive days.  Chavira Dec., ¶ 24; Guseman Dec., ¶ 29; Isaiz Dec., ¶ 21; Plaintiff's Dep.,
26 145:24-147:11.

27
28

Plaintiff was not replaced at the time of his termination, as Defendant was not anticipating his termination.[4] Guseman Dec., ¶ 28.

The person who eventually replaced Plaintiff was over 40 years of age. Guseman Dec., ¶ 28.

Plaintiff bases his opinion that age discrimination may have occurred at least party on remarks he testifies were made by Mr. Ogborn and Mr. Isaiz. Plaintiff's Dep., 121:7-122:10. On two instances, Mr. Ogborn asked Plaintiff, "Do you know what you are doing?" Plaintiff's Dep. 121:16-122:10. Mr. Ogborn did not refer to age during either of these two instances. Plaintiff's Dep., 126:13-129:3. He did not complain about the first remark because he thought Mr. Ogborn was just joking. Plaintiff's Dep., 132:2-133:17. He did not complain about the second instance because he felt it was not important. Plaintiff's Dep., 135:7-14.

Mr. Isaiz alleged remarks are limited to the statements, "When are you going to retire," "Are you feeling okay to work?" and his use of the term "viejon." Plaintiff's Dep., 121:7-17, 122:17-123:1, 135:15-21, 137:2-138:16. Plaintiff admits that he considered Mr. Isaiz his friend and Mr. Isaiz indicates that he and Plaintiff had a good working relationship. Plaintiff's Dep., 137:12-14; Isaiz Dec., ¶ 3. Mr. Isaiz' remark, "When are you going to retire?" occurred four or five months prior to Plaintiff's termination and he did not complain about the remark because he didn't pay attention to it. Plaintiff's Dec., 123:12-15, 125:3-5. Plaintiff testified that he did not know what Mr. Isaiz was insinuating with his remark, "Are you feeling okay to work?" Plaintiff's Dep., 125:24-126:4.

Mr. Isaiz' use of the term "viejon" occurred only occasionally, more or less around 10 times. Plaintiff's Dep., 137:2-139:16. This Spanish term can be used as a term of endearment, which can mean old man, but not in a derogatory sense. Plaintiff's Dep., 137:3-6. When Mr.

---

[4] Although Plaintiff testified at his deposition that someone under the age of 40 replaced him, his testimony is based on nothing more than speculation. He explained that he saw this person driving his truck and servicing the equipment that he used to service. Plaintiff did not know this person's name and based his age description on the person's looks. Plaintiff's Dep., 143:12-144:15.

5

Isaiz used this term, Plaintiff understood it to be a term of endearment. Plaintiff's Dep., 139:17-21.

Plaintiff can identify only one other individual, Mr. Ramirez, who he thinks may have been discriminated against because of his age. This is based on Plaintiff's opinion and he admitted that it has nothing to do with his case. Plaintiff's Dep., 116:10-119:15. Plaintiff also admits that he was not treated differently than people who were under 40 years of age. Plaintiff's Dep., 145:24-146:1. Plaintiff admits that the comparators identified in his EEOC papers was "an error" because "we were all treated the same." Plaintiff's Dep., 111:17-115:13.

Plaintiff also admitted he did not believe he was terminated because he had gout. Plaintiff's Dep., 146:2-4. Plaintiff admitted that he does not believe that any of Defendant's employees were treated differently because of their disabilities. Plaintiff's Dep., 119:16-19.

Plaintiff turned 65 years old on December 11, 2002. Plaintiff's Dec., 11:23-24.

## DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Hanon v. Dataproducts Corp., 976 F.2d 497, 500 (9th Cir. 1992). The evidence of a party opposing summary judgment is believed and all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). To establish a factual dispute, the opposing party may not rely on mere allegations or denials of an adverse parties' pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.

B.   Age Discrimination in Violation of ADEA and FEHA

For actions under both the ADEA and FEHA, a plaintiff alleging discriminatory termination must be able to survive the burden-shifting analysis set forth by the Supreme Court in McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802-804. Plaintiff has the initial burden of establishing a prima facie case of discrimination. See McDonnel Douglas, 411 U.S. at 802. The

burden then shifts to Defendant to provide a legitimate, nondiscriminatory reason, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employer's action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). The burden then shifts back to Plaintiff to establish that the employer's articulated reason was a "pretext," or cover-up, for unlawful discrimination. St. Mary's Honor Ctr., 509 U.S. at 507-508. Claims under FEHA are subject to the same analytical framework because the objective of the statutes are the same. *Horn v. Cushman & Wakefield Western, Inc.,* 72 Cal. App.4th 798, 805 (1999).

To establish a prima facie case of age discrimination under the ADEA and FEHA, Plaintiff must demonstrate that he is (1) within the protected class of individuals over forty years of age, (2) that he was qualified for his position, (3) that he was discharged, and (4) that a younger person with equal or inferior qualifications replaced him. Nidds v. Schindler Elevator Corp., 113 F.3d 912 (9th Cir. 1996); Hersant v. Dep't of Soc. Serv., 57 Cal.App.4th 997, 1003 (1997).

Defendant argues, and the Court agrees, that Plaintiff has simply failed to establish a prima facie case of age discrimination. Insofar as Plaintiff presents direct evidence of remarks by Mr. Ogborn and Mr. Isaiz, the remarks are not sufficient to create a triable issue of material fact.

As to Mr. Ogborn's two remarks of "Do you know what you are doing," the remarks did not refer to age and Plaintiff did not complain because he felt the first was meant as a joke and the second was not important. As to Mr. Isaiz's remarks, the remarks came from a person with whom Plaintiff had a good working relationship and whom Plaintiff considered a friend. The remark, "When will you retire?" was made four to five months prior to Plaintiff's termination, and the remark, "Are you feeling okay to work?" doesn't refer to age and even Plaintiff refused to speculate as to its meaning. These remarks do not rise to the level needed to let a jury decide whether such remarks establish that unlawful discrimination occurred  See eg., Coleman v. Quaker Oats Co., 232 F.3d 1271 (9th Cir. 2000) (summarizing remarks that did not support an inference of discrimination, such as "we don't necessarily like grey hair," "old timers," "old-boy network," and "overqualified").

This leaves Mr. Isaiz's use of the term "viejon," which Defendant argues can be distinguished from the remarks courts have found to show discriminatory intent because the term is not offensive or unwelcome on its face . See eg. Cordova v. State Farm Ins. Co., 124 F.3d 1145 (9th Cir. 1997) (finding that "dumb Mexican" shows discriminatory intent).  Indeed, the term can be used in an endearing fashion and the evidence demonstrates that Plaintiff understood that Mr. Isaiz intended the term in an endearing fashion.

Nor can Plaintiff demonstrate that he was replaced by a younger person.  Plaintiff's testimony about his replacement is pure speculation.  At his deposition, when asked how he knew this person was under 40, Plaintiff replied, "Because the person is distinguishable" and "He looked young."  Plaintiff's Dep., 143:20-21, 144:16-18.  Plaintiff did not know the person's name and thought he replaced Plaintiff because "he was the one driving my truck," and "he was servicing the equipment that I used to service."  Plaintiff's Dep., 144:2-15.  While the burden of establishing a prima facie case is not onerous, Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248248 (1981), it cannot be met by testimony that consists of nothing more than Plaintiff's unsupported and speculative opinion.

Plaintiff's primary contention is that two distinct "three day rules" exist and that Defendant has not applied them in a consistent or uniform manner.  Plaintiff contends that he complied with the Call-in Procedure, which requires a sick employee, or one who is unable to work, to call in on the first day of the absence.  If an employee is absent for three days without reporting their absence, the employee will be considered to have voluntarily resigned from employment.  Plaintiff argues that if he had actually violated the Call-in Procedure, as Defendant contends, then he should have been allowed to voluntarily resign.  Instead, Plaintiff was terminated, which leads him to believe that Defendant actually applied the "other" three day rule, which provides that any employee who is absent for three consecutive days without notifying Defendant will be terminated.

In essence, Plaintiff asks this Court to find evidence of age discrimination based on Defendant's interpretation and application of two related rules regarding employees' absenteeism.  However, Defendant's interpretation and application of their rules, where the

evidence demonstrates uniform and consistent application, is not sufficient to establish an inference of age discrimination. See Guz v. Bechtel, 24 Cal. 4th 317, 359 (2000) ("if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct"); Morgan v. Regents of the Univ. of California, 88 Cal.App.4th 52, 75 (2000) ("An employee in this situation can not 'simply show the employer's decision was wrong, mistaken or unwise.'")

Even assuming Plaintiff could establish a prima facie case, Defendant has demonstrated that Plaintiff's employment was terminated only because the company believed that Plaintiff violated company policy. The evidence shows that Plaintiff called in sick on June 23, 2003, and indicated that he thought he may be able to return on June 25. Defendant reasonably understood this to mean that Plaintiff would return on the 25th, or call if he could not. Plaintiff was scheduled to work on June 25, 26 and 27, yet did not report to work or call in on those days. Defendant advised Plaintiff of this violation upon his return to work on June 30, and told him he was therefore terminated. Indeed, even Plaintiff admits that he was not treated differently than people who were under 40 years of age and that all employees were treated the same. Nor is there any evidence that any employees who violated these provisions remained employed with Defendant.

Finally, an analysis of pretext, while certainly not necessary, reveals that Plaintiff cannot overcome this burden. Plaintiff is subject to a heightened evidentiary burden in using pretextual evidence to avoid summary judgment. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (evidence of pretense must be "specific" and "substantial" in order to create a triable issue). The remarks identified above were not linked to the termination by anything other than speculation. Despite Plaintiff's unsupported speculation, Plaintiff was not replaced at the time of his termination and the evidence demonstrates that the person who eventually replaced him was older than 40. Moreover, there is no evidence that any other employee remained employed with Defendant after violation of the Call In Policy, and Plaintiff has no basis in knowledge for his testimony that another employee was terminated because of his age. To the extent Plaintiff attempts to demonstrate pretext using the alleged discrepancies in the two rules, this argument

1  fails for the reasons described above.  Again, Plaintiff has admitted that all employees were
2  treated the same.
3  C.      Disability Claim under FEHA
4           The burden shifting analysis described above also applies to Plaintiff's disability claim.
5  To establish a prima facie case under FEHA, Plaintiff must demonstrate that (1) he is a person
6  with a disability or medical condition; (2) that he was subject to an adverse employment
7  decision; and (3) the decision was made because of Plaintiff's disability or medical condition.
8  Allen v. Pacific Bell, 212 F.Supp.2d 1180, 1192 (D. Cal. 2002); Green v. State, 132 Cal.App.4th
9  97 (2005).
10         Plaintiff's evidence falls woefully short of establishing a prima facie case of disability
11 discrimination based on his gout.  Even assuming that Plaintiff's gout qualifies as a disability, he
12 offers no evidence that he was terminated based on his gout.  Plaintiff explains that his gout has
13 prevented him from working on at least two occasions during Plaintiff's employment and that
14 Defendant was aware of his problems with gout, yet this certainly does not establish an inference
15 of disability discrimination.  Moreover, Defendant has provided ample evidence, discussed fully
16 above, that the only reason for Plaintiff's termination was his violation of company policy.
17 Finally, Plaintiff cannot demonstrate pretext, especially in light of his admitted belief that he was
18 not terminated because he had gout and his belief that Defendant's employees were not treated
19 differently because of their disabilities.
20         Accordingly, Defendant's motion for summary judgment is GRANTED.  Plaintiff's
21 complaint is DISMISSED in its entirety.

23         IT IS SO ORDERED.
24      **Dated:      October 21, 2005**                **/s/ Dennis L. Beck**
        3b142a                                   UNITED STATES MAGISTRATE JUDGE